IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America | ) | CR/A No. 6:22-cr-00096-DCC-1 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Larry Anthony Ladson, Sr., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant Larry Anthony Ladson, Sr.'s Motion to Suppress.  ECF No. 33.  Pursuant to the Court's Order, defense counsel refiled Defendant's Motion to Suppress with a supporting memorandum.  ECF No. 39. Thereafter, counsel was relieved and new counsel was appointed for Mr. Ladson.  ECF No. 44.  Mr. Ladson's newly appointed counsel filed a Supplemental Motion to Suppress. ECF No. 51.  The Government filed a Response in Opposition.  ECF No. 59.  The Court held a suppression hearing on October 13, 2022, and directed the parties to file supplemental briefing and responses as requested.  ECF No. 60.  For the reasons set forth below, the Court denies Mr. Ladson's Motion.

## BACKGROUND

On February 8, 2022, Mr. Ladson was charged in a six-count Indictment for possession with intent to distribute cocaine, methamphetamine, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(b)(1)(D); possession of a firearm and ammunition after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); and possession of a firearm in furtherance of a drug trafficking

crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  ECF No. 2 at 1–4.  The Court determines

the following facts, which are drawn from the record, the parties' exhibits, and the

testimony provided at the evidentiary hearing, by a preponderance of the evidence.  *See*

*United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of

proof at suppression hearings should impose no greater burden than proof by a

preponderance of the evidence.") (citation omitted); *United States v. Stevenson*, 396 F.3d

538, 541 (4th Cir. 2005) ("In the course of deciding a motion to suppress, the district court

may make findings of fact[.]").

On the morning of January 9, 2020, Fountain Inn Police Department Officers were

searching for Trico Ladson ("Trico"), Mr. Ladson's son, on an arrest warrant for murder.

Hearing Transcript ("Tr.") at 9:5–10.  Pursuant to an initial search warrant, the officers

went to Mr. Ladson's residence at 108 Webbwood Drive in Simpsonville, South Carolina

to locate Trico because his driver's license and paperwork retained by the state probation

office indicated that he resided at that address.[1]  *Id.* at 9:10–24.  The search warrant

authorized a search for Trico in addition to the following property:

> Any and all evidence concerning the investigation of the
> Murder, Armed Robbery, and violation of Conspiracy Laws
> which occurred on Tuesday, June 11, 2019 at 124 Friendly
> Street, in the City of Fountain Inn, S.C. to include any patent
> or latent fingerprints, any personal information or items
> belonging to suspect Trico Anthony Ladson.  Any and all
> firearms, ammunition and accessories commonly used on

---

[1] Shortly before officers began their search at Mr. Ladson's home, a separate team of officers attempted to locate Trico at another address, where he was ultimately apprehended and arrested. Tr. at 11:19–25; 12:1–10; 30:12–22. U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Agent Nick Matkins and Fountain Inn Police Department Sergeant Troy McBride's testimony revealed that the two teams had coordinated ahead of time and that at least some of the law enforcement officers searching Mr. Ladson's home were aware that Trico had been arrested prior to their search.  *Id.* at 11:25; 12:1–10; 30:25; 31:1–9.

> firearms.  Any and all serological evidence pertaining to this case to include bodily fluids, blood, DNA, latent evidence, fiber, hair, or any other evidence that may identify potential suspects, witnesses or victims.     Any and all telecommunication devices, to include, cellular phones, cellular phone watches, tablets, or any other device that is commonly used to speak or text via cellular frequencies.

Gov't's Ex. 1 at 1 (January 9, 2020, Initial Search Warrant).

In executing the search warrant, two officers approached the door of Mr. Ladson's home and knocked repeatedly while identifying themselves as law enforcement.  Def.'s Ex. 2 at 01:50–03:00. (Sergeant McBride's Body Worn Camera Video).  Mr. Ladson and his girlfriend came to the door.  They were asked to exit the residence with their hands raised, and they complied with the officers' request.  *Id.* at 03:07–03:20.  Sergeant McBride then stepped into the entryway of the home, again identified himself as law enforcement, announced that he was executing a search warrant, and conducted a protective sweep of the premises.  *Id.* at 03:30–03:38.  In doing so, he entered a bedroom doorway and located evidence of cocaine in plain view on the dresser and evidence of marijuana in plain view in the toilet in the bathroom.  *Id.* at 08:28–08:50.  After finishing his protective sweep of the property, Sergeant McBride exited the home and appeared to indicate to the other officers on scene that obtaining another search warrant for the drugs may be prudent.  *Id.* at 10:30–10:43.  Shortly thereafter, law enforcement obtained a second warrant to search the residence located at 108 Webbwood Drive for "[a]ny illegal drug or narcotic as well as any property that may be stolen."  Gov't's Ex. 2 at 5 (January 9, 2020, Second Search Warrant).  As result of the search, law enforcement seized a firearm and ammunition, cocaine, methamphetamine, and marijuana from Mr. Ladson's home.  *Id.* at 1.

On May 20, 2022, Mr. Ladson filed a Pro Se Motion to Suppress, arguing that the firearm, ammunition, marijuana, cocaine base, and methamphetamine found inside his home were obtained by law enforcement in violation of the Fourth Amendment.  ECF No. 33.  Defense counsel filed a Motion to Suppress with a supporting memorandum and a Supplemental Motion to Suppress.  ECF Nos. 39, 51.  On September 16, 2022, the Government filed a Response in Opposition.  ECF No. 59.  The Court held a suppression hearing on October 13, 2022.  ECF No. 60.  ATF Agent Nick Matkins and Sergeant Troy McBride testified at the hearing.  The Motions are now before the Court.

## APPLICABLE LAW

### *Fourth Amendment*

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  This right is enforced via the exclusionary rule, a judicial remedy that "prevents the government from using evidence obtained as a result of an illegal search against the victim of that search."  *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (citing *Utah v. Strieff*, 579 U.S. 232, 237 (2016)).  "The right to be free from an unreasonable search is personal in nature and cannot be vicariously asserted."  *United States v. Gray*, 491 F.3d 138, 144 (4th Cir. 2007) (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)).  Suppression based on a Fourth Amendment violation "can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."  *Alderman v. United States*, 394 U.S. 165, 171–72 (1969).  Therefore, "the protections of the Fourth Amendment are activated only when the state conducts a search

or seizure in an area in which there is a 'constitutionally protected reasonable expectation of privacy.'" *United States v. Davis*, 690 F.3d 226, 241 (4th Cir. 2012) (quoting *New York v. Class*, 475 U.S. 106, 112 (1986)).

      "Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, this Court has inferred that a warrant must generally be secured." *Kentucky v. King*, 563 U.S. 452, 459 (2011). "When a search is conducted pursuant to a warrant, it 'is limited in scope by the terms of the warrant's authorization.'" *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) (quoting *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009)). "It is well-settled that the Fourth Amendment does not set forth some general 'particularity requirement.'" *United States v. Cobb*, 970 F.3d 319, 326–27 (4th Cir. 2020) (citing *United States v. Grubbs*, 547 U.S. 90, 97 (2006)) (internal quotation marks omitted). "So long as there is probable cause to believe that contraband or evidence of a crime will be found in a particular place, the Fourth Amendment specifies only two matters that must be particularly described in the warrant: the place to be searched and the persons or things to be seized." *Id.* at 327 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983) and *Grubbs*, 547 U.S. at 97) (internal quotation marks omitted). The terms of the warrant should not be interpreted in a "hypertechnical" manner but instead should be read with a "commonsense and realistic" approach to avoid turning a search warrant into a "constitutional straight jacket." *See Williams*, 592 F.3d at 519 (quoting *United States v. Robinson*, 275 F.3d 371, 380 (4th Cir. 2001) and *Phillips*, 588 F.3d at 223). "[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *United States v. Leon*, 468 U.S. 897,

918 (1984); *see Davis v. United States*, 564 U.S. 229, 231–32, 237 (2011) (noting the Court created the exclusionary rule as "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation" and that the rule's primary purpose is to "deter future Fourth Amendment violations").

## DISCUSSION

Mr. Ladson challenges the legality of law enforcement's search of his residence on January 9, 2020, and seizure of a firearm, ammunition, marijuana, cocaine base, and methamphetamine found inside the home. ECF No. 39 at 3. At the outset, Mr. Ladson disputes the existence of a search warrant at the time law enforcement arrived and searched the premises, claiming that he was never shown a search warrant prior to the breach of his home. ECF No. 33 at 1. He further argues that the initial search warrant is so broad as to constitute an impermissible general search for the discovery of incriminating evidence. ECF No. 39 at 8.[2]

The Government contends that the initial search warrant is not overly broad, that inclusion of overly broad language will not invalidate a search warrant under the severance doctrine, and regardless, the evidence Mr. Ladson seeks to suppress was

---

[2] Mr. Ladson also challenges the manner of execution of another search warrant on September 9, 2020. ECF No. 39 at 10; Tr. at 102:2–5. While this Court continues to be troubled by the seemingly excessive actions of law enforcement on that occasion, suppression is not an available remedy. *See Hudson v. Michigan*, 547 U.S. 586, 594 (2006). Moreover, to the extent Ladson argues that execution of the warrant could be so unreasonable and extreme as to trigger a suppression remedy, such an argument is foreclosed by the comparative fact pattern in a similar case. *See United States v. Ankeny*, 502 F.3d 829, 832–34 (9th Cir. 2007).

validly seized pursuant to the second search warrant obtained upon discovery of the drugs in plain view.  ECF No. 59 at 6, 8.

Upon review, the Court finds that an initial search warrant existed when officers searched Mr. Ladson's home, the search warrants were validly executed, and the evidence was lawfully seized.  It is apparent from Sergeant McBride's body worn camera video that Mr. Ladson exits the home with his hands raised and empty, that an officer subsequently shows him paperwork and explains it to him, and that Mr. Ladson is thereafter shown holding the paperwork in his hands.  In fact, there is no evidence that the papers Mr. Ladson is seen holding were anything other than a search warrant.  Thus, Mr. Ladson's argument regarding the existence of a search warrant authorizing law enforcement to initially search his home for Trico and related items is without any support in the record.

As to Mr. Ladson's argument that the search warrant is overly broad, the Court finds that the initial warrant is sufficiently particular with respect to the place to be searched and the items to be seized, as it authorized a search of Mr. Ladson's residence for Trico, because it was where he purportedly lived, and for items related to the murder investigation in which he was a suspect.  Because Trico had been located, apprehended, and arrested prior to the search of the residence, the initial search warrant was operative as to items belonging to Trico and those relevant to law enforcement's murder investigation.

Moreover, the Court finds that, in executing the initial search warrant, law enforcement's protective sweep of the residence was conducted appropriately, and it is undisputed that the drugs were found in plain view during the protective sweep.  *See*

*Maryland v. Buie*, 494 U.S. 325, 327, 335 (1990) (describing a protective sweep as "a quick and limited search of premises . . . conducted to protect the safety of police officers or others" that "may extend only to a cursory inspection of those spaces where a person may be found"); *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997) (noting "[t]he 'plain-view' doctrine provides an exception to the warrant requirement for the *seizure* of property" (emphasis in original)).  Upon discovery of the drugs in plain view, the officers properly obtained a second search warrant, which the Court finds is sufficiently particular with respect to the place to be searched and the items to be seized, as it authorized a search of Mr. Ladson's residence for illegal drugs and stolen property. Accordingly, Mr. Ladson's Motion to Suppress must be denied.[3]

---

[3] Mr. Ladson also claimed at the hearing that the affidavit supporting the second search warrant contains a misrepresentation with respect to when the illegal drugs were field tested and identified.  Tr. at 58:9–23; 86:9–25; 96:15–25; 97:1–16.  While Mr. Ladson has presented evidence that casts doubt on the accuracy of law enforcement's statement in the affidavit at the time the search warrant was sought, the Court finds that the officer did not make any intentional misrepresentation or falsehood or any false statement with reckless disregard for the truth such that a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), is warranted.  *See Franks*, 438 U.S. at 155 ("[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.").  Even if Mr. Ladson has made the substantial showing required under *Franks*, the statement was not necessary to the finding of probable cause in this case.  Indeed, the officers' plain view observations of the illegal drugs, alone, would constitute probable cause sufficient to justify the second search warrant.  Thus, a *Franks* hearing on this issue is unnecessary.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Pro Se Motion to Suppress [33], Motion to Suppress and Memorandum in Support [39], and Supplemental Motion to Suppress [51] are **DENIED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

November 15, 2022
Spartanburg, South Carolina